1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   C. FADHEEM R. HARDEMAN,                    No. C 04-03360 SI

9              Plaintiff,                      **ORDER GRANTING IN PART**
                                               **DEFENDANT'S MOTION FOR**
10    v.                                       **SUMMARY JUDGMENT**

11  AMTRAK/CALTRAIN RAILROAD,

12              Defendant.
                                         /
13

14        On July 28, 2006, the Court heard argument on defendant's motion for summary judgment.

15  Having carefully considered the arguments presented and the papers submitted, and for good cause

16  appearing, the Court hereby GRANTS IN PART defendant's motion.

17

18                          **BACKGROUND**

19        Plaintiff C. Fadheem R. Hardeman, an African American male, worked for defendant National

20  Railroad Passenger Corp. d/b/a Amtrak as an engineer on Amtrak's Caltrain line until he was terminated

21  on May 30, 2003.  Hardeman claims his termination was the product of race discrimination.

22        Hardeman's termination arose from an incident that occurred on April 10, 2003, at the railroad

23  yard adjacent to the Fourth & Townsend Caltrain Station in San Francisco.  On that date, Hardeman,

24  accompanied by assistant conductor Paul Soule and conductor trainee Bruce Shelton – both of whom

25  are white males – was maneuvering an engine to a "pocket" track on the side of the yard.  As they were

26  proceeding, they came upon a red stop signal before one of the switches, requiring that they stop the

27  engine and receive permission from a dispatcher in San Jose before proceeding.

28        Due to a software error, the dispatcher's computer erroneously showed that the switch in front

of Hardeman's engine was properly aligned. The dispatcher therefore gave Hardeman permission to proceed through the switch at a restricted speed. As Hardeman moved the engine through the misaligned switch, it guided the engine onto a "spur" track that led to the ground. The train, moving at a slow speed of approximately five miles per hour, derailed and came to rest a few feet from a parking lot. *See* Hardeman Decl., ¶ 28; Erlewine Decl., Exh. 1 (photographs of derailed engine).

Following an investigation, disciplinary charges were brought against all three members of the engine's crew. Miller Decl., ¶¶ 7-8. All three crew members were also offered "suspension waivers." *See id.*, Exh. E (suspension waiver forms). Amtrak offered Soule a five-day suspension waiver, four days of which would be held in abeyance, and Shelton a three-day waiver. Due to the fact that Hardeman was deemed primarily responsible for the derailment and to the fact that he was already on deferred suspension for another derailment that occurred four months earlier, Amtrak's offer to Hardeman was significantly higher that its offer to Soule or Shelton: 15 days.

Soule and Shelton accepted their offers, but Hardeman rejected his. Accordingly, a disciplinary hearing was held on the charges against Hardeman on May 22, 2003. *See* Erlewine Decl., Exh. 3 at AMTRAK 00681-735 (transcript of hearing). On May 30, 2003, the hearing officer issued his decision, finding Hardeman guilty of violating Amtrak's rules and policies. *Id.* at AMTRAK 00778-79. The same day, Hardeman was terminated from Amtrak. *Id.* at AMTRAK 00780-81. Amtrak later gave Hardeman the opportunity for leniency, offering to reinstate him "with seniority unimpaired on a last chance basis without any compensation for time out of service." Hriczak Decl., Exh. A. Hardeman refused this offer.

On August 17, 2004, plaintiff filed this action, alleging that his termination was the product of race discrimination. Approximately one year later, plaintiff filed a first amended complaint, alleging violations of 42 U.S.C. § 1981, Title VII, and Article 1, Section 8 of the California Constitution. Defendant now moves for summary judgment. For the following reasons, the Court GRANTS IN PART defendant's motion.[1]

---

[1]In connection with the summary judgment motion, both parties have filed a host of evidentiary objections. The Court OVERRULES plaintiff's objection to the transcript of the May 22, 2003, disciplinary hearing, and DENIES plaintiff's motion to strike (Docket No. 115). The Court also OVERRULES defendant's objections to the declarations of Hardeman, Breda, Fontaine, and Wong. Finally, the Court OVERRULES defendant's objections to the declarations of Gallo and Campbell

**United States District Court**

For the Northern District of California

**DISCUSSION**

Hardeman's complaint raises two separate instances of discrimination.  First, he claims that he was disciplined for a derailment in 2002 more severely than a Caucasian employee was disciplined for a derailment in 2003.  Second, he claims that his termination was also the product of race discrimination.[2]  Hardeman's complaint also includes a request for punitive damages.

Defendant maintains that plaintiff may not include the disparate discipline claim in this action because he did not exhaust that claim with the EEOC.  While the Court agrees with defendant that plaintiff did not exhaust his disparate discipline claim, plaintiff's complaint includes a cause of action under 42 U.S.C. § 1981, which does not require exhaustion.  *Mitchell v. Keith*, 752 F.2d 385, 392 (9th Cir. 1985) ("[T]here is no requirement that a plaintiff file a discrimination claim in order to bring suit under § 1981.").  Thus, the lack of exhaustion is not barrier to plaintiff pursuing his disparate discipline claim under § 1981.  *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 845 (9th Cir. 2004) (finding that plaintiff could raise charges of disparate discipline under § 1981 despite the fact that he had not exhausted them with the EEOC).  Further, plaintiff has raised an issue of fact regarding this claim, because he has presented evidence that the Caucasian engineer was disciplined far less harshly than he was.  *See* Breda Decl., ¶¶ 3-5; Hardeman Decl., ¶¶ 17-18; Tilley Decl., Exh. B.

As to plaintiff's other claim, the Court finds that plaintiff has raised a question of fact regarding whether his termination was due to race discrimination.  In addition to the above evidence that plaintiff's termination was a far more severe punishment than the Caucasian engineer received, plaintiff has introduced evidence that one of the individuals who was involved in the decision to terminate him had made racist comments in the past.  *See* Fontaine Decl., ¶¶ 7-8, 12-18; Price Decl., Exh. K (Amtrak interrogatory answers).  This is evidence that plaintiff's termination may have been racially motivated.

---

without prejudice to defendant raising those objections again before trial.

[2]It is unclear whether plaintiff intended to raise a hostile work environment claim – despite the fact that he brought no such charge before the EEOC his complaint contains a vague reference to a hostile work environment at Amtrak.  In its opening brief, defendant challenged any such claim on statute of limitations grounds, and plaintiff failed to respond in any way in its opposition brief. Accordingly, the Court finds that hostile work environment claim is currently stated in plaintiff's complaint.

*See, e.g., Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1133 (4th Cir. 1988) ("The use of racially offensive language by the decisionmaker is relevant as to whether racial animus was behind the . . . decision . . . ."); *cf. Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) (allegedly racist remarks of coworker were not probative of discriminatory intent because coworker was not the decisionmaker"). The Court finds this sufficient for plaintiff's claim to survive summary judgment.

Finally, defendant argues that even if plaintiff's case survives summary judgment, his claim for punitive damages should be stricken because the evidence cannot support punitive damages. Plaintiff has made no attempt to defend his request for punitive damages, which are available in a Title VII case only for "willful or egregious" conduct. The Court agrees with defendant that plaintiff has provided no evidence of such conduct. Indeed, the fact that a mediation panel found that plaintiff's termination was not "arbitrary, capricious or excessive" suggests that plaintiff's termination was not "willful or egregious." Accordingly, the Court GRANTS defendant's motion as to plaintiff's punitive damages claim.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment as to plaintiff's claim for punitive damages, and DENIES the remainder (Docket No. 61).

**IT IS SO ORDERED.**

Dated: July 31, 2006

_____
SUSAN ILLSTON
United States District Judge

United States District Court

For the Northern District of California

4