1   R. SCOTT ERLEWINE (State Bar No. 095106)
    PHILLIPS, ERLEWINE & GIVEN LLP
2   One Embarcadero Center, Suite 2350
    San Francisco, California 94111
3   Telephone: (415) 398-0900
    Facsimile: (415) 398-0911
4
    Attorneys for Defendant
5

6

7                   UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9                   SAN FRANCISCO DIVISION

10

11  C. FAHEEM R. HARDEMAN,                 )   CASE NO. C 04-3360 SI
                                           )
12              Plaintiff,                  )   **DEFENDANT'S MOTION IN**
                                           )   **LIMINE NO. 2 RE TESTIMONY OF**
13  v.                                     )   **MARY FONTAINE, MARY**
                                           )   **GOTTHARDT AND OTHER**
14  AMTRAK/CALTRAIN RAILROAD,              )   **WITNESSES WHICH IS REMOTE**
                                           )   **IN TIME AND PLACE EVIDENCE;**
15              Defendant.                  )   **DECLARATION OF COUNSEL**
                                           )
16  _____       )   Trial:  October 2, 2006
                                           )   Pretrial Conf.: September 12, 2006
17                                             Courtroom 10

18                 **NOTICE OF MOTION AND MOTION**

19       TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

20       PLEASE TAKE NOTICE that on September 12, 2006, at 3:30 p.m., in Courtroom 10 of

21  the above-entitled court, defendant National Railroad Passenger Corporation d/b/a Amtrak shall,

22  and hereby does, move the Court for an order excluding any and all testimony from Mary

23  Fontaine and Mary Gotthardt, and any and all testimony from Ms. Fontaine, Ms. Gotthardt or any

24  other witnesses on the subject of matters relating to the Oakland yard. Most, if not all, of this

25  evidence dates to the early 1990's. The order of exclusion should include any and all questioning

26  relating to these individuals or the proposed subject matter of their trial testimony.

27

28

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

DEF.'S MOTION IN LIMINE NO. 2 – Case No. C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\MTN IN LIMINE\MIL-2-fontaine-deely-decl

1    Amtrak brings this motion on the ground that the subject matter of conduct and alleged

2    statements made principally by manager Joe Deely or others in the Oakland yard dating to 1990-

3    92 that Ms. Fontaine, Ms. Gotthardt and any other witnesses allegedly observed or overheard is

4    remote in time and place, lacks a nexus to the facts of this case, and is therefore irrelevant and

5    inadmissible.  Even if admissible, the probative value of this evidence to the issues to be decided

6    by the jury in this case is so weak as to be substantially outweighed by the danger of unfair

7    prejudice to Amtrak, and it should be excluded.  Fed.R.Evid. 403..  In the alternative, and for all

8    the same reasons, Amtrak requests a ruling that no mention be made of these remarks until

9    plaintiff lays the proper evidentiary foundation for their introduction; at a minimum, plaintiff

10   must be made to show that (1) Deely or any other individual allegedly heard to use offensive

11   remarks was a decisionmaker (as defined by the case law) in the adverse employment action(s) at

12   issue here, and (2) these individuals, including Deely, knew plaintiff's race at or around the time

13   of these actions, before the Court allows this evidence to come before the jury.

14   Amtrak hereby moves the Court for an order before *voir dire* examination of the jury to

15   instruct plaintiff and his counsel and witnesses on the following matters:

16   1.    Any attempt to refer to or introduce the testimony of the witnesses listed above,

17   or either of them, will be improper and prejudicial to defendant.  Even if the Court sustained an

18   objection to it, the evidence would be so prejudicial that defendant could not receive a fair trial.

19   2.    Accordingly, defendant asks this Court for an order instructing plaintiff's counsel

20   and witnesses presented by plaintiff not to attempt to introduce such evidence, by reference to it

21   or comment on it and not to suggest, comment directly or indirectly on or refer to said evidence

22   in any way before the jury without first obtaining the Court's permission outside the presence of

23   the jury.

24   3.    Defendant also requests that the Court direct plaintiff's counsel to caution, warn

25   and instruct his witnesses not to make any reference to said testimony and to follow the same

26   order.

27

28

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

DEF.'S MOTION IN LIMINE NO. 2 – Case No. C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\MTN IN LIMINE\MIL-2-fontaine-deely-decl

2

1   Amtrak bases this motion upon this Notice, the following Memorandum of Points and

2   Authorities, the accompanying declaration of counsel ("Counsel Decl.") together with the

3   exhibits attached thereto, as well as all the other pleadings and papers on file in this action, and

4   upon such other matters as may be presented to the Court at the time of hearing on the motion.

5

6   DATED: August 28, 2006                    PHILLIPS, ERLEWINE & GIVEN LLP

7

8

9                                             By:
10                                             R. Scott Erlewine
                                              Attorneys for Defendant
11

## MEMORANDUM OF POINTS AND AUTHORITIES

12   ## I.   INTRODUCTION

13          Plaintiff has identified as relevant to this case purported 15-year old incidents involving,

14   among other things, alleged racial epithets principally uttered by Joe Deely (an Amtrak Oakland

15   manager) taking place in Amtrak's Oakland yard.  As an aside, plaintiff also mentions alleged

16   epithets uttered or overheard by several other Oakland managers and employees.  This evidence

17   comes from Mary Fontaine and Mary Gotthardt, and possibly other witnesses whom plaintiff

18   never disclosed as witnesses or, if disclosed, never identified on this subject in this case.  (Ms.

19   Fontaine and Ms. Gotthardt are also the subject of defendant's first in limine motion to exclude

20   on the ground that they were late-revealed witnesses.)

21          According to plaintiff's May 4, 2006 disclosure, these remarks were allegedly made in

22   1990-93 while these women worked in Oakland.  Ms. Gotthardt also apparently intends to testify

23   to alleged unspecified "harassment and retaliation against African-American Amtrak employees

24   and retaliatory practices in general." According to a declaration she submitted in support of

25   plaintiff, Ms. Fontaine also apparently intends to testify to Joe Deely's handling of disciplinary

26   matters, and his "attitude" toward people of color during the years 1990-92.

27

28

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

DEF.'S MOTION IN LIMINE NO. 2 – Case No. C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\MTN IN LIMINE\MIL-2-fontaine-deely-decl

1    By contrast, plaintiff did not overhear a racial slur or remark of any kind, and none were

2    directed to him, during his entire employment with Amtrak based in San Francisco.  Plaintiff

3    began work for Amtrak on the Caltrain line in June 1992; he was promoted to engineer on that

4    line in 1993.  Amtrak fired plaintiff in 2003.  None of the individuals working in Oakland were

5    his manager or immediate supervisor.

6    To be admissible, plaintiff must show a nexus between these alleged remarks and this

7    alleged conduct and the adverse employment decisions at issue here made 11 years later.

8    Plaintiff cannot make that showing, since the proposed evidence is too remote in time and place.

9    Moreover, plaintiff cannot show that any of these managers supervised plaintiff, were involved in

10   his disciplinary history up to April 2003, or that any of them (including Mr. Deely) even knew

11   plaintiff's race when the decision to terminate plaintiff was made, a nexus the law requires.

12   Even if the Court determines the evidence of these remarks or this conduct was otherwise

13   relevant, the probative value of this evidence is so weak as to be substantially outweighed by the

14   danger of unfair prejudice to Amtrak and should be excluded.  Fed.R.Evid. 403.  At the very

15   least, the Court should preclude plaintiff from mentioning any evidence of racial slurs or remarks

16   or conduct in front of the jury or introducing evidence of them until the proper evidentiary

17   foundation is laid, consisting at a minimum of showing both that these managers were

18   decisionmaker(s) in the adverse employment action(s) at issue here and that they knew plaintiff's

19   race at or around the time of those actions.

20   **II.   STATEMENT OF FACTS**

21   Plaintiff's ten Rule 26 disclosures are attached to defendant's first in limine motion.

22   Mary Fontaine and Mary Gotthardt are first listed as witnesses in a May 4, 2006 disclosure.

23   Counsel Decl. at ¶ 2 & Ex. A.  Both identify remarks made or overheard by Joe Deely and others

24   or that Mr. Deely was informed of by individuals in Oakland during the period 1988-93.  Ms.

25   Gotthardt also apparently intends to testify to alleged unspecified "harassment and retaliation

26   against African-American Amtrak employees and retaliatory practices in general."

27

28

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

DEF.'S MOTION IN LIMINE NO. 2 – Case No. C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\MTN IN LIMINE\MIL-2-fontaine-deely-decl

4

1       The first mention of something more on this subject came in an answer to an

2   interrogatory served by plaintiff two weeks before discovery cutoff. Counsel Decl. at ¶ 3 & Ex.

3   B (Answer to Interrog. No. 10). The extent of the disclosure was as follows: "Other managers,

4   including Robert Bordenave, Joe Deely and Jerry Denton, were overheard using the "N" word at

5   various times." (The other two individuals, together with Messrs. Borge and Vandenburg who

6   are also mentioned in this interrogatory response, do not appear to have any connection to this

7   case, and plaintiff has nowhere alleged as much in any other disclosure or discovery response;

8   defendant therefore likewise moves for an order excluding any evidence of their alleged

9   comments or remarks.)

10      Ms. Fontaine (but not Ms. Gotthardt) later provided a declaration in opposition to

11  defendant's summary judgment motion. Counsel Decl. at ¶ 4 & Ex. C. In it, she says she

12  worked for Amtrak during the years 1988 to 1992, with a one year leave of absence in 1989.

13  (Fontaine Decl. at ¶ 3.) She does not say when Mr. Deely made his derogatory remark; in no

14  event, was it later than her last month of employment in October 1992. (Fontaine Decl. at ¶¶ 6 &

15  8.)

16      She also claims that she observed Mr. Deely's "racist attitude" in dealing with people of

17  color. (Fontaine Decl. at ¶ 12.) She points to two incidents while she served as a union shop

18  steward during her last two years of employment at Amtrak from 1990 to 1992: One in which

19  Mr. Deely declined to charge an African-American employee for a rule violation, but nonetheless

20  "harassed" this employee (according to Ms. Fontaine) about the subject; and the other in which

21  an employee Ms. Fontaine was representing was terminated when the charges against him for

22  stealing from the company were sustained following hearing. (Fontaine Decl. at ¶¶ 16 & 20.) In

23  the later instance, Ms. Fontaine's "opinion" was that the charges against this employee were not

24  proved.

25      Amtrak hired plaintiff in June 1992 on the Caltrain Service in San Francisco. Counsel

26  Decl. at ¶ 5. In 1993, he became an engineer on the Caltrain line in 1993. *Id.* At no time were

27  any of these individuals plaintiff's manager or immediate supervisor. *Id.* At no time while

28

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

DEF.'S MOTION IN LIMINE NO. 2 – Case No. C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\MTN IN LIMINE\MIL-2-fontaine-deely-decl

5

1 | working for Amtrak in San Francisco did plaintiff overhear a racist slur or remark.  Counsel

2 | Decl. at ¶ 6 & Ex. E.

3 | **III.   ARGUMENT**

4 |      **A.   Evidence of These Alleged Remarks Is Not Admissible and Even if**
        **Admissible, Its Probative Value is Substantially Outweighed by the Danger**

5 |         **of Unfair Prejudice to Amtrak.**

6 |      This evidence—taking place before plaintiff's employment with Amtrak as an engineer,

7 | in a different locale more than 10 years before plaintiff's termination—is too remote in time and

8 | place to be relevant to this case.  *Schnabel v. Abramson*, 232 F.3d 83, 88 & n.4 (2nd Cir. 2000)

9 | (age-related statement about plaintiff, by ultimate decision-maker, was irrelevant, where

10 | statement remote in time, since "the statement sheds no light on why, over three years later,

11 | defendants decided to fire plaintiff"); *Rubinstein v. Tulane Educational Fund* 218 F.3d 392, 400-

12 | 01 (5th Cir. 2000) (statements must be "proximate in time").

13 |      The law requires a factual nexus between alleged racist remarks or conduct and the

14 | decision to fire plaintiff.  That nexus is lacking here:  None of the alleged statements were made

15 | about plaintiff.  None of the alleged statements were made by or to any manager or supervisor of

16 | plaintiff.  And none of the alleged statements were made by or to anyone otherwise connected to

17 | or involved in plaintiff's employment or his discipline.

18 |      The law also requires a legal nexus.  Putting aside that the statements and conduct are

19 | alleged to have occurred over 10 years ago, took place in Oakland not San Francisco, and were

20 | unrelated to any aspect of plaintiff's termination of employment, as it pertains to any of this

21 | evidence, such a nexus would include at a minimum that (1) Mr. Deely or any of the other

22 | individuals alleged were decisionmaker(s) (as that term is used in the case law) in the adverse

23 | employment actions at issue here, and (2) these individuals knew plaintiff's race at or around the

24 | time of those decisions.  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004)

25 | (evidence of discriminatory remarks by non-decisionmaker irrelevant to prove decisionmaker's

26 | motive or animus); *DeHorney v. Bank of Amer.*, 879 F.2d 459, 468 (9th Cir. 1989) (no *prima*

27 |

28 |

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

1   *facie* case absent showing that decision-maker knew plaintiff's race; *Robinson v. Adams*, 847

2   F.2d 1315, 1316 (9th Cir. 1988) (same).

3          Plaintiff can make no showing that any of these individuals (Messrs. Bordenave, Deely,

4   Denton, Borge and Vandenburg) spoke to or had any influence on the supervisors who conducted

5   the investigation, charging and hearing in connection with plaintiff's April 2003 derailment, or

6   that any had involvement with the discipline of plaintiff for the December 2002 derailment.

7          Although Mr. Deely did speak to George Erickson in or around May 2003 (Counsel Decl.

8   at ¶ 4 & Ex. C [Erickson Depo. at 98:5-101:2]), the law requires that plaintiff establish that Mr.

9   Deely made the ultimate decision to fire plaintiff, or that he influenced Mr. Erickson's decision

10   to do so. *Bergene v. Salt River Proj.*, 272 F.3d 1136, 1141 (9th Cir. 2001) (decisionmakers

11   include the manager "ultimately responsible for" the adverse decision, and others who "played an

12   influential role" in such decision); *Beale v. GTE California, 999 F. Supp.* 1312, 1321 n. 5 (C.D.

13   Cal. 1996) (only those making "recommendations" "relied on" in the ultimate decision are

14   "decisionmakers" in employment action). Mr. Erickson's testimony demonstrates only that he

15   recalls discussing plaintiff's termination with Mr. Deely. (Erickson Depo. at 100:1-5.) This

16   general recollection falls far short of identifying Mr. Deely as being responsible for the decision

17   to fire plaintiff. Moreover, Mr. Erickson's testimony nowhere shows that Mr. Deely encouraged

18   or influenced Mr. Erickson's decision to fire plaintiff.

19          Even if the Court were prepared to accept the foregoing as fact, plaintiff can offer no

20   evidence that Mr. Deely knew plaintiff's race—severing any legal "nexus" required to establish

21   the relevance of his remarks to this case. *DeHorney*, supra, 879 F.2d at 468; *Robinson v. Adams*,

22   847 F.2d 1315, 1316 (9th Cir. 1987) (one cannot "reasonably" or "rationally" infer discriminatory

23   intent "if, as here, a plaintiff offers proof that he is Black, but there is no showing by direct or

24   indirect evidence that the decision maker knew this fact"). Among other things, Mr. Deely works

25   in Oakland, not on the Caltrain service in San Francisco—his only contact to that service is via

26   Mr. Erickson who reported to him—and plaintiff can proffer no evidence that Mr. Deely ever

27   met or spoke to him or, for that matter, touched any piece of paper that noted plaintiff's race.

28

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

DEF.'S MOTION IN LIMINE NO. 2 – Case No. C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\MTN IN LIMINE\MIL-2-fontaine-deely-decl

1    Finally, even if the remarks or conduct were otherwise relevant, their probative value

2 (i.e., to prove that plaintiff's termination was the result of Mr. Deely's or any other manager's

3 racial animus) is so weak that it is substantially outweighed by the danger of unfair prejudice to

4 Amtrak in this case. Fed. R. Evid. 403. The effect of these alleged statements as well as the

5 conduct as reported by Ms. Fontaine and Ms. Gotthardt by any manager (e.g., Mr. Deely) who

6 did not work with plaintiff, was located in Oakland and is several levels up the chain of

7 command is likely to be highly prejudicial.

8    The admission of these 10+ year-old statements, which are disputed,  may cause the jury

9 to infer, among other things, that all decisionmakers at Amtrak are biased against African-

10 Americans.  Similarly, Ms. Fontaine's "opinion" on the validity of charges against an Amtrak

11 employee for stealing, which Mr. Deely sustained 10+ years ago following hearing, proves

12 nothing.  That and the balance of the evidence proffered on Mr. Deely's "racist attitude"

13 (whatever that means) and conduct concerning harassment or retaliation (neither of which is

14 alleged here) is insufficient to prove racist application of policy and procedure *in this*

15 *case*—precisely what plaintiff offers it for.

16   **B.    The Court Should Limit Mention of These Remarks or the Introduction of**
           **any Evidence of Them Until Plaintiff Lays a Proper Evidentiary Foundation**
17           **For Their Admission.**

18    Alternatively, given the highly inflammatory nature of this proposed testimony, together

19 with the tenuous nature of these remarks' relevance to the facts of this case, the Court should

20 order that no mention be made of these remarks or evidence introduced of them until plaintiff

21 lays the proper evidentiary foundation; *at a minimum*, plaintiff must be made to show at trial via

22 relevant and admissible evidence that (1) these individuals were decisionmakers (as defined by

23 the case law) in the adverse employment action(s) at issue here, (2) they knew plaintiff's race at

24 or around the time of these actions, before the Court allows evidence of these remarks to come

25 before the jury; and (3) the evidence is not remote in time or place.

26

27                           .

28

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

DEF.'S MOTION IN LIMINE NO. 2 –  Case No. C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\MTN IN LIMINE\MIL-2-fontaine-deely-decl

8

1    IV.    **CONCLUSION**

2           For all the above reasons, defendant respectfully requests that the Court grant the order

3    requested and exclude any and all trial testimony from Ms. Gotthardt and Ms. Fontaine and any

4    other proposed witness on these subjects, or limit any mention of such evidence or introduction

5    of evidence of them until a proper foundation is laid.

6

7    DATED:  August 28, 2006                        PHILLIPS, ERLEWINE, & GIVEN LLP

8

9

10                                                  By:
                                                        R. Scott Erlewine
11                                                  Attorneys for Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

DEF.'S MOTION IN LIMINE NO. 2 –  Case No. C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\MTN IN LIMINE\MIL-2-fontaine-deely-decl

## DECLARATION OF COUNSEL

R. Scott Erlewine declares:

1.      I am a member of Phillips, Erlewine & Given LLP, counsel for defendant in this case.   The facts stated in this declaration are based on my personal knowledge, except where stated to be on information and belief, and as to those, I believe it to be true.

2.      Attached hereto as Exhibit A is a true and correct copy of "Plaintiff's Third Supplemental Disclosures," dated May 4, 2006.

3.      Attached hereto as Exhibit B is a true and correct copy of pertinent excerpts from "Plaintiff's Answers to Defendant's First Set of Interrogatories," served by mail on May 24, 2006.

4.      Attached hereto as Exhibit C is a true and correct copy of "Declaration of Mary J. Fontaine in Opposition to Defendant's Motion for Summary Judgment," served on July 7, 2006.

5.      Attached hereto as Exhibit D is a true and correct copy of pertinent excerpts from "Deposition of George Erickson," taken on June 1, 2006.

6.      Attached hereto as Exhibit E is a true and correct copy of pertinent excerpts from "Deposition of C. Faheem R. Hardeman," taken on May 2, 2006.

7.      According to plaintiff's declaration submitted in opposition to defendant's summary judgment motion, Amtrak hired plaintiff in June 1992 on the Caltrain Service and became an engineer in May 1993 on the Caltrain line.  According to Amtrak's records, at no time was Mr. Deely plaintiff's manager or immediate supervisor.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED:  August 28, 2006

_____
R. Scott Erlewine

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

DEF.'S MOTION IN LIMINE NO. 2 – Case No. C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\MTN IN LIMINE\MIL-2-fontaine-deely-decl

10

PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
OK-HEE SHIM, ESQ. (STATE BAR NO. 240998)
PRICE AND ASSOCIATES
A Professional Law Corporation
The Latham Square Building
1611 Telegraph Avenue, Suite 1450
Oakland, CA 94612
Telephone: (510) 452-0292
Facsimile: (510) 452-5625

Attorneys for Plaintiff
C. FAHEEM R. HARDEMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| C. FAHEEM R. HARDEMAN, | ) | NO. C04-3360 SI |
| Plaintiff, | ) | **PLAINTIFF'S THIRD** |
| v. | ) | **SUPPLEMENTAL DISCLOSURES** |
| AMTRAK/CALTRAIN RAILROAD, | ) | |
| Defendant. | ) | |

Pursuant to Federal Rules of Civil Procedure, Rule 26(e), Plaintiff C. FAHEEM R. HARDEMAN ("Mr. HARDEMAN") supplements the disclosure of the following person and documents:

## I.    DISCLOSURE OF PERSONS

1.    Mary Gotthardt.  Address: 1255 Midway Drive, Tracy CA 94337.  Telephone number: (209) 830-0011.  Subject Matter: Will testify as to Defendant Amtrak's racial discrimination, harassment, and/or retaliation against African-American Amtrak employees, and retaliatory practices in general.  The testimony will include, but is not limited to the use of racial slurs and racist epithets by top management employees.  For example, she will testify that she heard

JP224

**EXHIBIT A**

1  Joseph Deely ("Deely") and other Amtrak managers use a variety of racial epithets including "n**er

2  bi**h," and that she overheard two Yard managers refer to another African-American employee as a

3  "black a**, " "lazy n**er," and "dumb n**er." She will testify that in approximately 1992, she

4  heard Chuck Berg, a road foreman of engines, tell Deely, then Defendant Amtrak's Director of the

5  California Corridor, that he was going to give a document to one of those "n*gg*r bitches" to type.

6  Deely did not reprimand Berg. She will testify that in approximately 1993, while standing outside

7  of the main office at the Yard, she heard Deely state that "the problem with these n*gg*rs is that

8  after you train them, they walk out on you." She will testify that she overheard Michael Bordenave,

9  an Amtrak Foreman, address and refer to black employees as "n*gg*rs." She will testify that she

10  complained to Deely regarding the use of racial slurs in the Yard, and that to her knowledge,

11  nothing was done in response to her complaint.

12          2.      Mary Fontaine. Address: 133 Quail Hollow Drive, Gault, CA 95632. Telephone:

13  (209) 327-4628, (209) 744-8501. Subject Matter: She will testify as to racially disparaging, hostile,

14  and offensive remarks made by such Amtrak employees including but not limited to Deely. Ms.

15  Fontaine will also testify that while acting as a union representative in or about 1994, she observed

16  Deely apply different standards based on race when considering discipline matters involving

17  Amtrak employees.

18  Dated: May 4, 2006                                        PRICE AND ASSOCIATES

19

20  _____

21                                                          OK-HEE SHIM, Attorneys for Plaintiff
                                                            C. FAHEEM R. HARDEMAN

22

23

24

25

26

27

1  PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
   OK-HEE SHIM, ESQ. (STATE BAR NO. 240998)
2  PRICE AND ASSOCIATES
   A Professional Law Corporation
3  The Latham Square Building
   1611 Telegraph Avenue, Suite 1450
4  Oakland, CA 94612
   Telephone: (510) 452-0292
5  Facsimile:  (510) 452-5625

6  Attorneys for Plaintiff
   C. FAHEEM R. HARDEMAN
7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  C. FAHEEM R. HARDEMAN,           )   NO. C04-3360 SI
                                     )
13                Plaintiff,         )   **PLAINTIFF'S ANSWERS TO**
                                     )   **DEFENDANT'S FIRST SET OF**
14  v.                               )   **INTERROGATORIES**
                                     )
    AMTRAK/CALTRAIN RAILROAD,        )
15                                   )
                  Defendant.         )
16  _____ )

17

18

19

20

21

22

23

24

25

26

27

28

39P222
                              -1-
          ANSWERS TO DEFENDANT'S INTERROGATORIES (C04-3360 SI)

EXHIBIT B

**INTERROGATORY NO. 10:**

State all facts on which **YOU** base **YOUR** contention at Paragraph 18 of your First Amended Complaint, that defendant has a "custom and practice of tolerating, encouraging and approving racial discrimination."

**ANSWER TO INTERROGATORY NO. 10:**

Plaintiff hereby incorporates as if fully set forth herein his objections and response to Interrogatory No. 8. Subject to and without waiving his objections, Plaintiff answers as follows:

Mr. Abner Morgan worked for Defendant Amtrak at its Oakland Yard from August 1990 until March 1995. Mr. Morgan had worked in the electrical field for fifteen (15) years. Despite his previous experience, he was hired by Amtrak as an "electrician's helper." Mr. Morgan was the only person in the Oakland Yard ever to be hired in that job category.

During Mr. Morgan's tenure at Amtrak, racial epithets and disparate treatment of African American employees were common, particularly of Mr. Morgan. Amtrak's Oakland Yard was managed by a small group of managers during Mr. Morgan's tenure. Vandenburg, the top official at the Yard, was heard to state that he did not want too many blacks as supervisors because of "too many problems." His second-in-command, Ray Borge, had a habit of calling African-Americans "shuffle-butt ni–ers" and even performed "the shuffle-butt ni–er" dance for his co-supervisors, including Vandenburg. Other managers, including Robert Bordenave, Joe Deely and Jerry Denton were overheard using the "N" word at various times.

During his tenure at Amtrak, Mr. Morgan was subjected to a barrage of disciplinary charges, even though white employees were rarely, if ever, disciplined for comparable behavior. On February 25, 1991, Mr. Morgan was asked to come to a meeting with his supervisor, Jerry Denton, and the facilities manager, Robert Vandenburg. Mr. Morgan, concerned that the meeting might involve some form of discipline, requested union representation for the meeting as permitted by the collective bargaining agreement. When he refused to attend the meeting without union representation, he was terminated for insubordination in violation of Rule L.

\\\

-12-
ANSWERS TO DEFENDANT'S INTERROGATORIES (C04-3360 SI)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

After filing a union grievance, Mr. Morgan was reinstated and the termination was reduced to a 10-day suspension. This was the harshest discipline imposed on any employee at the Yard for a Rule L violation during the period between 1989 and 1992. During his employment, Mr. Morgan was repeatedly denied access to training and training opportunities. For example, when he asked about receiving further training, he was told he "stood a snowball's chance in hell of becoming an electrician in the Oakland Yard." He was also assigned demeaning tasks outside of his craft that no white electrician was ever assigned.

In July 1993, Vandenburg tried to coerce Ken Phillips, Mr. Morgan's co-worker, into changing a statement regarding an interaction involving MORGAN and a union official at the Yard to reflect negatively on Mr. Morgan. Vandenburg told Mr. Phillips that he could make Mr. Phillips' life better for him if Mr. Phillips would change his statement, and that "they were going to fire [Morgan] anyways [sic]." Mr. Phillips refused and was thereafter subjected to retaliation himself.

1
2
3
4  Dated: May 24, 2006                    PRICE AND ASSOCIATES
5
6
7                                         OK-HEE SHIM, Attorneys for Plaintiff
8                                         CLEAHEEM R. HARDEMAN
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

05/24/2006   21:27   5103361687                                    PAGE   01/02

1  Hardeman v. Amtrak/Caltrain Railroad,
2  United States District Court Case No. C04-3360 SI

3                              **VERIFICATION**

4      I, C. FAHEEM R. HARDEMAN, hereby declare that:

5      I am the Plaintiff in the above-entitled action.  I have read the foregoing Answers to

6  Defendant's First Set of Interrogatories, and know the contents thereof; the same is true of my own

7  personal knowledge, except as to the matters which are stated on information or belief, and as to

8  those matters, that I believe them to be true.

9      I declare under penalty of perjury under the laws of the State of California and the United

10  States of America that the foregoing is true and correct.

11      Executed on May 24 , 2006, at Oakland, California.

12

13                          _C. Faheem R. Hardeman_
14                          C. FAHEEM R. HARDEMAN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

05/24/2006   21:27   5103361687

Hardeman v. Amtrak/Caltrain Railroad,
United States District Court Case No.  C04-3360 SI

### PROOF OF SERVICE VIA U.S. MAIL

I declare that:

I am over the age of eighteen (18) years and a citizen of the United States.

I am not a party in this action.  My business address is: The Latham Square Building,

1611 Telegraph Avenue, Suite 1450, Oakland, California 94612.  I hereby certify that on

the date stated below, I served a true copy of the following document:

**PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST
SET OF INTERROGATORIES**

by placing it in a sealed envelope with postage fully prepaid and deposited said envelope

in a designated depository for the receipt of the United States Mail at Oakland,

California, addressed as shown below to:

Scott Erlewine, Esq.
Phillips, Erlewine & Given, LLP
One Embarcadero Center, 23rd Floor
San Francisco, CA 94111
Phone No. (415) 398-0900
Fax No. (415) 398-0911

I am an attorney assigned to this case.  I declare under penalty of perjury

under the laws of the State of California and the United States that the foregoing is true

and correct.

Executed at Oakland, California, on May 24, 2006.

OK-HEE SHIM, ESQ.

1  PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
   OK-HEE SHIM, ESQ. (STATE BAR NO. 240998)
2  PRICE AND ASSOCIATES
   A Professional Law Corporation
3  The Latham Square Building
   1611 Telegraph Avenue, Suite 1450
4  Oakland, CA 94612
   Telephone: (510) 452-0292
5  Facsimile: (510) 452-5625

6  Attorneys for Plaintiff
   C. FAHEEM R. HARDEMAN
7

8

9                 UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11

12

13 C. FAHEEM R. HARDEMAN,          )    NO. C04-3360 SI
                                   )
14            Plaintiff,           )    **DECLARATION OF MARY J.**
                                   )    **FONTAINE IN OPPOSITION TO**
15 v.                              )    **DEFENDANT'S MOTION FOR**
                                   )    **SUMMARY JUDGMENT**
16                                 )
   AMTRAK/CALTRAIN RAILROAD,       )    DATE      July 28, 2006
17                                 )    TIME:     9:00 a.m.
                                   )    DEPT:     10, 19th Floor
18            Defendant.           )
                                   )
19 _____)    HON. SUSAN ILLSTON

20

21        I, MARY J. FONTAINE, declare that:

22        1.    I am a resident of the State of California.  I make this Declaration on personal

23 knowledge in opposition to Defendant's Motion for Summary Judgment.

24        2.    I am a Caucasian woman.  I was employed by Amtrak from March 1988 to

25 October 1992.

26        3.    I took a leave of absence from Amtrak for approximately one (1) year in

27 1989.

28

139P204MS]
                                   -1-
              DECLARATION OF MARY J. FONTAINE (C04-3360 SI)

EXHIBIT C

1      4.      While employed at Amtrak, I held the positions of Assistant Conductor and

2   Conductor, respectively.

3      5.      During the time I worked at Amtrak, Joe Deely was first Transportation

4   Superintendent, then Superintendent of the Oakland Yard.

5      6.      During approximately my last two years working at Amtrak, from 1990 to

6   1992, Joe Deely was my immediate supervisor.

7      7.      I was and still am familiar with Joe Deely's voice. I could recognize it

8   anywhere.   While working at Amtrak, I heard Joe Deely use racial epithets to refer to African-

9   American employees.

10     8.      On one particular occasion, I was at the Transportation Office at the Oakland

11  Station. I was located in the outer office, and Joe Deely was around the corner inside of his office.

12  I heard Deely talking to another person, either in his office or on the phone. I heard Deely referring

13  to an African-American Transportation Department clerk, Renee, as a "n*gger."

14     9.      During my last two years at Amtrak, I was elected to be Chairman of the

15  Local Committee of Adjustment, a function akin to a Shop Steward or Griever, for my union, the

16  United Transportation Union ("UTU").

17     10.      Through my position at the UTU, I represented other Conductors in

18  disciplinary matters, pay problems, vacation time and other employment issues subject to the

19  contract between UTU and Amtrak.

20     11.      In my capacity as union representative, I regularly met with Joe Deely

21  informally, during one-on-one meetings to discuss, among other issues, disciplinary matters.

22     12.      Through my dealings with Joe Deely involving union issues, I observed that

23  he had a racist attitude towards African-Americans. I observed that he treated people of color in a

24  derogatory manner. He would speak to African-Americans alternating with condescending or

25  aggressive tones of voice, whereas when he addressed Caucasian employees, men in particular, his

26  tone was more solicitous. His body posture would also reflect his derogatory attitude towards

27  African-Americans.

28

39P204MS.

13.     Over the course of attending these informal meetings with Joe Deely, I observed that he tended to handle disciplinary matters involving white employees informally, while disciplinary matters involving Black employees were handled formally more often.

14.     I have represented African-American Conductors at disciplinary hearings for infractions that would have been handled informally, if handled at all, had they involved a Caucasian Conductor.

15.     On one occasion, I worked with an African-American Conductor, Charles Washington, who was being disciplined for allegedly sitting in a private room in a sleeper car, visiting with a passenger. The passenger was a witness and appeared via telephone on Mr. Washington's behalf, stating that nothing out of order occurred in the sleeper car.

16.     Though Mr. Washington was not formally investigated, Joe Deely harassed him about the incident for several months and threatened to have a formal investigation.

17.     On another occasion involving Charles Washington and a passenger issue, yet another passenger appeared as a witness on Mr. Washington's behalf at a formal investigation because Joe Deely was not willing to handle the matter informally.

18.     In my experience, if Charles Washington were white, questions involving Conductor behavior or interaction with passengers would not have been turned in for disciplinary consideration. Even if the matter involving Conductor behavior or interaction with passengers was handled as a disciplinary matter, and if Charles Washington were Caucasian, the worst outcome would have been remedial training. Instead, Mr. Washington was subjected to formal investigation.

19.     In my experience as a UTU representative, I know of many incidents arising out of personnel in the Operating Department involving revenue problems that were being discussed informally.

20.     I represented another African-American Conductor, O.B. Scott, who was being formally investigated on a revenue issue, contrary to the practice of handling revenue issues with leniency. It is my opinion that in O.B. Scott's case, a formal investigation was not warranted. Furthermore, the allegations against him were not substantiated. He was, however, terminated. Joe

1    Deely was the Hearing Officer. I believe in this case he was also the deciding official.

2          21.     Over the course of my employment at Amtrak, the incident involving Mr.

3    Scott was the first time I was aware of where a Conductor or Assistant Conductor was formally

4    disciplined over a revenue matter. As a practice, employees identified as having revenue issues

5    were given great leniency. The employee in question generally met privately with Mr. Deely to

6    discuss the problem. Often, employees would simply remit the missing revenue over the course of

7    time. This occurred without any formal investigation.

8          I declare under penalty of perjury under the laws of the State of California and the

9    United States that the foregoing is true and correct. If called as a witness, I could and would testify

10    competently to the matters stated herein.

11          Executed this 6th day of July, 2006, at Berkeley, California.

12          /s/

13

14          MARY J. FONTAINE, Declarant

15

16

17

18    \

19

20

21

22

23

24

25

26

27

28

```
 1              IN THE UNITED STATES DISTRICT COURT

 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                  SAN FRANCISCO DIVISION

 4   C. FAHEEM R. HARDEMAN,

 5        Plaintiff,

 6   vs.                              No. C 04-3360 SI

 7   AMTRAK/CAL TRAIN RAILROAD,

 8        Defendant.

 9   _____/

10

11

12                  Deposition of

13                 GEORGE ERICKSON

14             Thursday, June 1, 2006

15

16        (Pages 69-97, 179-189, 210-216 and 220-221

17    are deemed Confidential and are bound under

18    separate cover)

19

20

21   Reported by:

22   LUANNE MEISSEN, RPR

23   CSR No. 6479

24   Job No. 69146

25
```

**CERTIFIED**

**COPY**

Esquire Deposition Services
800.770.3363

EXHIBIT D

```
 1                        APPEARANCES

 2    For the Plaintiff:

 3           PRICE AND ASSOCIATES

 4           Attorneys at Law

 5           BY: PAMELA Y. PRICE, Esq.

 6           1611 Telegraph Avenue, Suite 1450

 7           Oakland, California 94612

 8

 9    For the Defendant:

10           PHILLIPS, ERLEWINE & GIVEN LLP

11           Attorneys at Law

12           BY: R. SCOTT ERLEWINE, Esq.

13           One Embarcadero Center, Suite 2350

14           San Francisco, California 94111

15

16                        --o0o--

17

18

19

20

21

22

23

24

25
```

2

1             BE IT REMEMBERED, that on Thursday, June 1,

2     2006, commencing at the hour of 10:35 a.m. thereof,

3     at the offices of Esquire Deposition Services, 1801 I

4     Street, First Floor, Sacramento, California, before

5     me, LUANNE MEISSEN, a Certified Shorthand Reporter in

6     the State of California, duly authorized to

7     administer oaths and affirmations, personally

8     appeared:

9                     GEORGE ERICKSON,

10    a witness called by the Plaintiff in the

11    above-entitled action, who, having been duly sworn by

12    the Certified Shorthand Reporter to tell the truth,

13    the whole truth and nothing but the truth, testified

14    under oath as follows:

15                     --o0o--

16

17

18

19

20

21

22

23

24

25

5

1    Q.    Do you recall that you issued a letter to

2    Mr. Hardeman advising him that his employment was

3    going to be terminated?

4    A.    Yes.

5    Q.    Okay.  Do you recall discussing that

6    decision with Mr. Deely before you sent the letter to

7    Mr. Hardeman?

8    A.    Probably on more than one occasion.

9    Q.    "Probably" is --

10   A.    Yeah.

11   Q.    "Probably" suggests speculation, and we

12   don't want you to speculate.

13   A.    No, I discussed it with Joe, I just don't

14   know how many times.

15   Q.    Okay.  Do you know when was the first time

16   you discussed it in relation to the issuance of the

17   letter?

18   A.    No, I don't.

19   Q.    Okay.

20   A.    It's two years, two and a half, three years

21   ago.

22   Q.    Did you review the letter that you sent to

23   Mr. Hardeman to prepare for today's deposition?

24   A.    Yes.  Oh, did I review?  Yes.

25   Q.    Okay.  Did you speak to Mr. Deely about the

98

1    decision to terminate Mr. Hardeman more than once?

2          MR. ERLEWINE:  Objection, vague and

3    ambiguous.

4          THE WITNESS:  I'm sure I did it more than

5    once.  I just don't know how many times.

6    Q.     BY MS. PRICE:  Okay.  Was it more than five

7    times?

8    A.     I don't know.

9    Q.     Was there anyone else present on any

10   occasion where you and Mr. Deely discussed

11   Mr. Hardeman's termination?

12   A.     I don't recall.

13   Q.     What do you recall about your discussions

14   with Mr. Deely --

15         MR. ERLEWINE:  Objection, vague and

16   ambiguous.

17   Q.     BY MS. PRICE:  -- regarding Mr. Hardeman's

18   termination?

19         MR. ERLEWINE:  Objection, vague and

20   ambiguous.

21         THE WITNESS:  I'm having a hard time hearing

22   you, I'm sorry.

23   Q.     BY MS. PRICE:  What do you recall about your

24   discussions with Mr. Deely regarding Mr. Hardeman's

25   termination?

99

1    A.        Very little.  I don't recall -- I mean, I

2    just don't recall.  I know we talked.  I know we

3    probably talked -- I know we talked a number of

4    times.  I don't know how many and I don't recall the

5    specifics, I really don't.

6    Q.        Do you recall anything that you said or that

7    he said?

8    A.        No.

9    Q.        Do you recall any issues that you and he

10   discussed?

11   A.        No.

12   Q.        Do you recall any concerns that he expressed

13   to you about terminating Mr. Hardeman?

14   A.        It's hard to sort them out.  I just don't

15   recall what I said to Joe, okay, with regard to

16   Hardeman.  We had a lot of discussions about him.  I

17   just don't recall what Joe said.  I don't recall.  I

18   don't recall what I even said to Joe.

19   Q.        My question was a little different.

20   A.        Okay.

21   Q.        Do you recall what concerns, if any,

22   Mr. Deely had about terminating Mr. Hardeman?

23            MR. ERLEWINE:  Objection, that question is

24   vague and ambiguous, calls for speculation.  To the

25   extent that it relates to the conversation, he's

```
 1   answered your question.

 2            THE WITNESS:  I just don't recall.

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

REPORTER'S CERTIFICATE

1

2          I certify that the witness in the foregoing

3   deposition,

4

5   was by me duly sworn to tell the truth, the whole truth

6   and nothing but the truth in the within-entitled cause;

7   that said deposition was taken at the time and place

8   herein named; that the testimony of said witness was

9   reported by me, a duly certified shorthand reporter and

10  a disinterested person, and was thereafter transcribed

11  under my direction into typewriting.

12          I further certify that I am not of counsel or

13  attorney for either or any of the parties to said

14  deposition, nor in any way interested in the outcome of

15  the cause named in said caption.

16          Dated:   JUN 1 5 2006

17

18

19          LUANNE MEISSEN, RPR
            Certified Shorthand Reporter
20          State of California
            Certificate No. 6479
21

22

23

24

25

1            IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                 SAN FRANCISCO DIVISION

4

5   C. FAHEEM R. HARDEMAN,

6                Plaintiff,

7   vs
                                    No. C 04-3360 SI
8   AMTRAK/CALTRAIN RAILROAD,

9                Defendant.
    _____/

10

11       Deposition of

     C. FAHEEM R. HARDEMAN
12
       Tuesday, May 2, 2006
13

14           Pages 246 through 260 are deemed
        Confidential and are bound under separate cover
15

16   **CERTIFIED**

17   **COPY**

18

19

20   REPORTED BY:  JANET NOGARA, CSR #1218

21

22

23              NOGARA REPORTING SERVICE
             130 Battery Street, Suite 580
24           San Francisco, California 94111
                   (415) 398-1889
25

1

2

3

4

5

6

7

8

9

10

11

12          MR. ERLEWINE:  Q.  Did anybody at Amtrak at anytime

13     make any racial slurs that you were aware of?

14          MS. PRICE:  Objection, overbroad.

15          THE WITNESS:  Not in my face, sir.

16

17

18

19

20

21

22

23

24

25

1  STATE OF CALIFORNIA      )
                            )
2  COUNTY OF SAN FRANCISCO)

3

4          I, JANET NOGARA, a Certified Shorthand Reporter

5  of the State of California, duly authorized to

6  administer oaths pursuant to Section 8211 of the

7  California Code of Civil Procedure, do hereby certify

8  that

9                  C. FAHEEM R. HARDEMAN,

10 the witness in the foregoing deposition, was by me duly

11 sworn to testify to the truth, the whole truth and

12 nothing but the truth in the within-entitled cause; that

13 said testimony of said witness was reported by me, a

14 disinterested person, and was thereafter transcribed

15 under my direction into typewriting and is a true and

16 correct transcription of said proceedings.

17         I further certify that I am not of counsel or

18 attorney for either or any of the parties in the

19 foregoing deposition and caption named, nor in any way

20 interested in the outcome of the cause named in said

21 caption.

22         Dated the 17th day of May, 2006

23

24

                    JANET NOGARA
25                  CSR No. 1218 (California)