PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
OK-HEE SHIM, ESQ. (STATE BAR NO. 240998)
PRICE AND ASSOCIATES
A Professional Law Corporation
The Latham Square Building
1611 Telegraph Avenue, Suite 1450
Oakland, CA 94612
Telephone: (510) 452-0292
Facsimile:  (510) 452-5625

Attorneys for Plaintiff
C. FAHEEM R. HARDEMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C. FAHEEM R. HARDEMAN,<br><br>  Plaintiff,<br><br>v.<br><br>AMTRAK/CALTRAIN RAILROAD,<br><br>  Defendant. | NO. C04-3360 SI<br><br>**PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE DEFENSE EXPERTS**<br><br>DATE:  SEPTEMBER 12, 2006<br>TIME:  3:30 P.M.<br>CTRM:  10, 19th FLOOR<br><br>TRIAL DATE: OCTOBER 2, 2006<br><br>HON. SUSAN ILLSTON |

**INTRODUCTION**

In preparation for this trial, Defendant AMTRAK has proffered Mark Cohen and Don Dunning as experts in their particular fields. At trial AMTRAK will seek to elicit expert witness testimony from these individuals. But because they are in fact not experts in their given field of interest, MR. HARDEMAN now moves to preclude AMTRAK from offering testimony from such individuals at trial.

/ / /

### I. UNDER DAUBERT THE COURT CAN QUALIFY A WITNESS AS AN EXPERT BY VIRTUE OF THAT WITNESS'S EXPERIENCE, TRAINING, AND EDUCATION

If scientific, technical, or otherwise specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a witness qualified as an expert by knowledge, experience, or education may testify thereto. (Federal Rules of Evidence ("FRE") Rule 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 590-591, 113 S.Ct. 2786 (1993); *Mukhtar v. California State University*, 299 F.3d 1053, 1063 (9th Cir. 2002), amended by 319 F.3d 1073 (9th Cir. 2003).)

To be admissible in court, proposed expert testimony must be helpful rather than confusing to the trier of fact. (FRE Rule 402, 403, 702; *Daubert,* 509 U.S. at 590-591.) Conclusory testimony is not helpful and should be excluded. (*General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 519 (1997).) The expert's opinions cannot be based upon speculation, must be reasonably grounded in fact and must connect the facts of the case with any studies or data relied upon. (*Id; Jetcraft Corporation v. Flight Safety International*, 16 F.3d 362, 366 (10th Cir. 1993) ("human factors" expert testimony that crash caused by inadvertent retraction of landing gear excluded as mere "professional speculation").) In ruling on whether an expert witness should be qualified to give expert testimony, the District Court should carefully review the proffered expert and his or her testimony to ensure reliability. (FRE Rule 702, *Mukhtar*, 319 F.3d at 1076.) Courts are required to make "explicit findings and reasons" in furtherance of their gatekeeping function regarding expert testimony. (*Id.*) Moreover, even relevant testimony should be excluded if its probative value is outweighed by its undue prejudice. (FRE Rule 403.)

A witness' education, or his experience in a particular setting, can qualify that witness as an expert. (*See* FRE Rule 702; *United States v. Harris*, 28 F.3d 1487, 1496-97 (8th Cir. 1994), cert. Denied. 513 U.S. 1098, 115 S.Ct. 768, 130 Ed.2d 664 (1995) (gang member qualified as an expert on drug trafficking, given his six years of experience setting up drug distribution centers in different cities); *United States v. Cordoba*, 104 F.3d 225 (9th Cir. 1997) (testimony regarding modus operandi of drug courier admissible based on witness' experience).)

Whether or not the proffered expert testimony is "scientific" in nature, the testimony must be relevant to the fact in issue and helpful to the trier of fact. (FRE Rule 702: *Daubert*, 509 U.S. at 590-591.) The basis upon which the expert relies in forming his or her opinion can be facts or data perceived by or made known to the expert at or before trial. If of the type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. (FRE Rule 703.)

## II. MARK COHEN IS NOT A QUALIFIED EXPERT WITNESS UNDER DAUBERT

Mr. Cohen was retained by AMTRAK as an expert regrading MR. HARDEMAN's economic damages, however Mr. Cohen's dearth of training in economics alone renders his testimony useless in this case. ***Mr. Cohen is not an economist and has no degrees in economics***. Mr. Cohen has a B.S. in Finance from the University of California, Berkeley, a Masters of Science from Boston University in International Finance and a Masters of Arts from St. Mary's College in Vocational Rehabilitation and Career Counseling. Additionally, Mr. Cohen took some business valuation courses at Lindenwood College. At his deposition, Mr. Cohen admitted that he was not aware whether the four universities he has attended have economics departments or award degrees in economics. Based on his education, Mr. Cohen may have training in business valuation, however, with regard to the study of economics, Mr. Cohen's alleged expertise comes from a few courses taken in the course of his pursuing degrees in finance.

Mr. Cohen's lack of training in economics is apparent in his flawed analysis of MR. HARDEMAN's economic loss. For example, Mr. Cohen did not use the standard net discount rate methodology used by economists for the past fifty (50) years. (Palfin Deposition "DEPO" @ 45:11-14.) A net discount rate is the increase in a person's income reduced by the interest rate. (Palfin DEPO @ 44:14-24.) As a result, Mr. Cohen incorrectly calculated an increase to MR. HARDEMAN's income over time. Had Mr. Cohen been aware of the prevailing standard net discount rate used by economists, he would have known to discount the increase in MR. HARDEMAN's future income by the interest rate. The difference between these figures yields a rate of 1.98%. Instead, Mr. Cohen used a rate of 3.2%, a rate far larger than those used by economists engaged in such analysis. By

employing this large rate, Mr. Cohen has demonstrated his lack of understanding regarding how the net discount rate methodology is used and ultimately, his lack of training in the field of economics. Mr. Cohen's lack of training is even apparent in the fact that his report contains no detailed bibliography and no summary of findings as is customary in economics reports.

Moreover, Mr. Cohen relies on statistics from the Bureau of Labor Statistics to shorten MR. HARDEMAN's work life expectancy. As Plaintiff's economic expert, economist Dr. Richard Palfin points out, statistics from the Bureau of Labor Statistics should not be used in the calculation of work life expectancy for MR. HARDEMAN's case because such statistics include voluntary retirement in its calculation. (Palfin DEPO @ 56:7-17.) The correct calculation used by economists in this type of analysis is one of work capacity. In MR. HARDEMAN's case, his capacity to work include years of work until retirement, in other words, until the age of 65 or older. Therefore, Mr. Cohen's use of statistics that account for voluntary retirement in his analysis of MR. HARDEMAN's economic loss is flawed based on prevailing standards in the study of economics.

Aside from relying on a speculative variable such as voluntary retirement, Mr. Cohen's relies on additional speculative variables, such as layoffs, termination, voluntary career changes, disability and death. Expert opinions cannot be based on speculation. (*General Electric*, 522 U.S. at 519.)

For these reasons, Mr. Cohen has demonstrated an inability to accurately assess MR. HARDEMAN's economic loss which renders him unqualified under *Daubert*.

### III. DON DUNNING IS NOT A QUALIFIED EXPERT WITNESS UNDER DAUBERT

Mr. Dunning is retained by Amtrak as an expert regarding MR. HARDEMAN's earning potential as a real estate broker. Though Mr. Dunning uses statistical data in his report, at his deposition, he was unable and unwilling to provide any scientific method for reaching his conclusions. After significant evasion regarding the methodology he used for his analysis at his deposition, Mr. Dunning stated, "it says nowhere in my report that I used a scientific method." (Dunning DEPO @ 79:10-11.) Mr. Dunning further admitted that he used a very small sample to reach his conclusions regarding the median income of Oakland real estate brokers and further admitted that he did not use a

random sample. (Dunning DEPO. @ 74:17-18; 75:14.) Mr. Dunning used just eleven agents he described only as "newer" and nine agents he described only as "more experienced." (Dunning REPORT @ ¶ 2.) Mr. Dunning justified his use of a small sample by stating it would be "absolutely grueling" to go through the Multiple Listing Service, the database he used to derive the sample, to attain the information for a larger sample. (Dunning DEPO @ 85:12-16.)

When pressed on his statistical methodology, Mr. Dunning even admitted that he was "not sure" how to choose a sample for his analysis since the exercise was something relatively new to him. (Dunning DEPO @ 81:13-16.) Furthermore, in his computation of median earnings, Mr. Dunning does not subtract any business costs that real estate agents customarily incur, such as car expenses, marketing expenses and office expenses. (Fredlund REPORT @ ¶ 3.) As a result of this failure, the numerical data Mr. Dunning posits as "median earnings" are in fact gross earnings, rendering his figures inaccurate and unreliable.

Mr. Dunning's analysis contains even more glaring deficiencies. First, Mr. Dunning concluded that MR. HARDEMAN should have earned anywhere between: 1) $83,850 and $147,188 in 2003; 2) $135,619 to $190,069 in 2004; 3) $152,376 to $ 176,729 in 2005; and 6) $31,556 to $74,719 from January 1 through May 26 in 2006. Mr. Dunning did not consider that MR. HARDEMAN had left the field of real estate after four years of full time effort because he was unable to support his family through the profession. Moreover, Mr. Dunning's figures are grossly out of sync with the median earnings (salary plus commission) for real estate brokers as calculated by the Bureau of Labor Statistics. The earnings calculated by Mr. Dunning are 3.23 times greater than the Bureau of Labor Statistics's median of $58,720.00 per year. (Fredlund REPORT @ ¶ 2.)

By his own testimony, Mr. Dunning was not qualified to calculate a median income for real estate brokers, especially since he did not use a random sample from which to derive the median. (*General Electric,* 522 U.S. at 519 (Expert's opinion must be reasonably grounded in fact and must connect the facts of the case with any studies or data relied upon).) An expert presenting statistics who cannot explain his own statistical methodology is no expert at all.

For these reasons, Mr. Dunning has demonstrated an inability to present accurate data regarding the average income generated by real estate brokers in Oakland. Therefore, he is not

qualified under *Daubert* to assess MR. HARDEMAN's earning potential as a real estate agent.

## CONCLUSION

MR. HARDEMAN moves to exclude both of AMTRAK's self-proclaimed experts. MR. HARDEMAN further asks the Court of admonish all defense counsel to refrain from referring to any such "evidence" and to instruct their witnesses to refrain from referring to any such "evidence."

Dated: August 28, 2006                    PRICE AND ASSOCIATES


                                          _____/s/_____
                                          PAMELA Y. PRICE, Attorneys for Plaintiff
                                          C. FAHEEM R. HARDEMAN