R. SCOTT ERLEWINE (State Bar No. 095106)
PHILLIPS, ERLEWINE & GIVEN LLP
One Embarcadero Center, Suite 2350
San Francisco, California 94111
Telephone: (415) 398-0900
Facsimile: (415) 398-0911

Attorneys for Defendant
NATIONAL RAILROAD PASSENGER CORPORATION
d/b/a AMTRAK

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| C. FAHEEM R. HARDEMAN,<br><br>   Plaintiff,<br><br>v.<br><br>AMTRAK/CALTRAIN RAILROAD,<br><br>   Defendants.<br>_____ | CASE NO. C 04-3360 SI<br><br>**NATIONAL RAILROAD PASSENGER CORPORATION D/B/A AMTRAK'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE DEFENSE EXPERTS; DECLARATION IN SUPPORT** |

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

The experts designated by defendant Amtrak are Messrs. Mark Cohen and Don Dunning. Mr. Cohen, Amtrak's economic damages expert, has over 20 years' experience in business and economic loss valuation, and has been certified as an economic damages expert in over 100 trials since 2001 (not to mention hundreds of additional depositions and arbitrations). Mr. Dunning, Amtrak's real estate broker expert, has been a licensed real estate broker for over 26 years, was the 2005 Oakland Association of Realtors' "Realtor of the Year," and has authored over 110 articles on real estate business subjects. Despite their formidable credentials and experience,

PHILLIPS, ERLEWINE & GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

_____
OPPOSITION TO MOTION IN LIMINE NO 2 - C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\OPPOSITIONS TO MILS\OPP-MIL-2-defense-experts-090106-FINAL.wpd

1  plaintiff claims that Messrs. Cohen and Dunning "are in fact not experts in their given field[s],"
2  and thus asks the Court to exclude their testimony, in the exercise of its "gatekeeper" function
3  under Fed.R.Evid. 702, 703, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579
4  (1993).  (Plaintiff's Motion In Limine No. 2 to exclude Defendant's Experts, p. 1:25-26).
5  Plaintiff's Motion *In Limine* should be denied.

## II.   STATEMENT OF THE ISSUES TO BE DECIDED

Plaintiff has moved the Court to decide whether the expert testimony of Messrs. Cohen and Dunning is sufficiently reliable to be admitted at trial, under Fed.R.Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  (Plaintiff's Motion In Limine No. 2 to Exclude Defendant's Experts [hereinafter, "MIL"]).

## III.  ARGUMENT

### A.   Legal Standard.

Expert testimony is admissible if it will "assist the trier of fact," which generally requires both relevance and reliability. Fed.R.Evid. 702; *Daubert, supra,* 509 U.S. at 590-91.  The Court has broad discretion, in its so-called "gatekeeping" role, to determine the reliability of proffered expert testimony. *Kumho Tire Co. Ltd v. Carmichael*, 526 U.S. 137, 152-53 (1999).  Whether the particular factors identified in *Daubert* (for assessing the reliability of scientific testimony) will apply "depends upon the particular circumstances of the particular case at issue." *Id*. at 150-51.  Exclusion of witness testimony "is the exception rather than the rule." Fed.R.Evid. 702, Advisory Committee Notes; *see also, First Union National Bank v. Benham*, 423 F.3d 855, 862-63 (8th Cir. 2005) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded").

### B.   Mark Cohen.

Plaintiff's assertion that Mr. Cohen is not qualified to testify as an expert on economic damages in an employment case such as this is mystifying.  Mr. Cohen's credentials speak for themselves: He has spent the last 22 years principally working as an expert witness on personal injury and employment cases, calculating economic losses to individuals.  He has given over 350

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

OPPOSITION TO MOTION IN LIMINE NO 2  - C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\OPPOSITIONS TO MILS\OPP-MIL-2-defense-experts-090106-FINAL.wpd

2

depositions and testified in well over 100 trials in which he has provided my expert opinion testimony with respect to lost earnings and benefits and related issues. (Declaration of Mark Cohen, submitted herewith ("Cohen Decl."), ¶ 2.) He has been certified as an expert on the subject in over 100 trials since 2001. (Counsel Decl., ¶ 2, Ex. A ["Cohen Report"], p. 23.)

Plaintiff asserts that Mr. Cohen's educational degrees in finance, rather than economics, render him incompetent to testify as an expert on the valuation of plaintiff's economic damages. (MIL, 3:9-19.) Plaintiff admits to Mr. Cohen's undergraduate and graduate degrees in the related field of finance, and to his "training" in "business valuation." (MIL 3:12-14, 17.) In addition to his business degrees with emphasis in finance, Mr. Cohen has had numerous economics courses in his undergraduate work at U.C. Berkeley as well as graduate study at Boston University. (Cohen Decl., ¶2.) There is substantial crossover in the study of business administration and finance with economics. Mr. Cohen's special emphasis in finance also qualifies him to speak to the issues of discount rates, inflation rates and the like to calculate present cash value. *Ibid*. His additional studies in vocational rehabilitation and career counseling compliment his studies of finance and economics in calculating lost streams of incomes from employment. *Ibid*.

No particular educational degree is required to be certified as an expert. *U.S. v. Crandon*, 173 F.3d 122, 126 (3rd Cir. 1999) ("[U]nder Rule 702, an individual need possess no special academic credentials to serve as an expert witness ... Practical experience as well as academic training and credentials may be the basis of qualification"). Instead, as plaintiff's own argument and authorities acknowledge, experience in the field is sufficient to qualify an expert. *Ibid*. (MIL, 2:23-27 ["A witness' ... experience in a particular setting, can qualify that witness as an expert"], *citing, U.S. v. Johnson*, 28 F.3d 1487, 1496-97 (8th Cir. 1994) [holding gang member's "extensive experience," gained over six years, sufficient to qualify him as expert in drug trafficking]). Mr. Cohen's credentials – both academic and his extensive experience as an expert witness – are more than ample to qualify him as an expert in this case.

The remainder of plaintiff's arguments concerning Mr. Cohen amount to a claim that he did not use sufficiently reliable methodology under *Daubert, supra,* 509 U.S. at 595. (MIL, 3:20-

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

OPPOSITION TO MOTION IN LIMINE NO 2 - C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\OPPOSITIONS TO MILS\OPP-MIL-2-defense-experts-090106-FINAL.wpd

3

4:19). Specifically, plaintiff attacks two things: (1) Mr. Cohen's use of a "net discount rate," which, plaintiff claims, was too high (MIL, 3:20-4:4); and (2) his calculation of plaintiff's work life expectancy (MIL, 4:5-19).

The former misstates the facts. Mr. Cohen did not use *any* net discount rate, which was unnecessary given his opinion that plaintiff will not suffer any future losses. (Cohen Decl., ¶4.) If there were future losses, Mr. Cohen would have used a 3% net discount rate – a figure used by other recognized expert economists in calculating present cash value of lost earning capacity and accepted by the U.S. Supreme Court. (Cohen Decl., ¶ 4; *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 548-49 (1983) [selected discount rate between 1% and 3% should not be reversed].)[1]

Mr. Cohen's discussion of plaintiff's work-life expectancy is likewise reliable. Mr. Cohen did not use any worklife tables, since he determined that Mr. Hardeman's alternative income would become equal to or greater than the income expected at Amtrak before the end of his worklife expectancy. Mr. Cohen, however, criticized Mr. Palfin's failure to use worklife tables in concluding that plaintiff would have been fully employed at Amtrak until age 65 – which is speculative. Mr. Palfin should have used worklife expectancy tables for railroad workers, which are the most specific available for persons in Mr. Hardeman's profession. (Cohen Decl., ¶¶6-7.) Mr. Cohen further criticizes Mr. Palfin for disregarding the general economic community that recognizes and employs statistics regarding factors such as disability, voluntary and involuntary absences from the labor force and death, which are common in evaluation of worklife expectancy. (Cohen Decl., ¶¶ 6-7.)

---

[1] Mr. Cohen's report criticizes Mr. Palfin's use of a 1.98% net discount rate because it is inconsistent with the history for the time period used by Mr. Palfin (1975-2005). Mr. Cohen notes that the interest returns on three-year treasury notes for this period exceeded wage growth by 3.2% - not the 1.98% claimed by Mr. Palfin. (Cohen Decl., ¶ 5.)

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

OPPOSITION TO MOTION IN LIMINE NO 2 - C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\OPPOSITIONS TO MILS\OPP-MIL-2-defense-experts-090106-FINAL.wpd

4

In sum, Mr. Cohen's methodology is sufficiently reliable for its admission under Fed.R.Evid. 702. Plaintiff's quibbles with the specifics of his analysis are for the jury.[2]

### C. Don Dunning.

Plaintiff does not challenge M. Dunning's education or experience in the real estate brokerage business (MIL, 4:22-6:1), nor could he: Mr. Dunning has been a licensed real estate agent since 1979, was the 2005 Oakland Association of Realtors' "Realtor of the Year," and has authored over 110 articles on real estate business subjects. (Counsel Decl., ¶ 3, Ex. B ["Dunning Report"] [6-21]); Declaration of Don Dunning, submitted herewith ["Dunning Decl."], ¶¶ 1-2.) Plaintiff likewise does not challenge Mr. Dunning's competence to opine on what types of business efforts would be "reasonable" for an Oakland realtor to undertake, in promoting and carrying out his real estate business, and whether plaintiff has met those standards and acted with reasonable diligence. Mr. Dunning will testify to such matters at trial, including, *inter alia*, plaintiff's failures to utilize agent referrals or target marketing, and to spend the "necessary" number of business hours. (See, e.g., Dunning Supplemental Report, pp. 22-23.)

These are appropriate subjects for expert testimony. *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1345-46 (9th Cir. 1987) (reversing, for abuse of discretion, district court's refusal to admit defense expert's testimony on the "reasonableness of [age discrimination plaintiff's] mitigation efforts"); *see also*, *First Union National Bank v. Benham, supra*, 423 F.3d at 863 (an experienced professional may testify as an expert on the standards of reasonable conduct for a professional in his field); *Linkstrom v. Golden T. Farms*, 883 F.2d 269, 270-71 (3rd Cir. 1989) (what conduct is "reasonable" within a particular profession or industry is a proper subject for expert testimony).

Plaintiff, by contrast, has designated *no real estate expert* whatsoever, as would be necessary to rebut such testimony by Mr. Dunning. *See, e.g., Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1005-06 (9th Cir. 2001) (professional investigator not qualified

---

[2] Mr. Cohen has also given opinions rebutting the opinions of defendant's expert and on plaintiff's failure to mitigate his damages, which plaintiff has not challenged.

PHILLIPS, ERLEWINE & GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

OPPOSITION TO MOTION IN LIMINE NO 2 - C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\OPPOSITIONS TO MILS\OPP-MIL-2-defense-experts-090106-FINAL.wpd

5

to testify as an expert on Korean culture); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F3d 965, 969-70 (10th Cir. 2001) (orthopedic surgeon not qualified as an expert on the adequacy of warnings provided by the manufacturer of a medical device).

Instead, plaintiff challenges only the *amounts* that Mr. Dunning has calculated as an estimate of the actual earnings that a reasonably diligent realtor in Oakland could have expected, during the years 2003-06. (MIL, 4:22-6:1). In this, plaintiff apparently claims that Mr. Dunning did not use sufficiently reliable principles and methods under *Daubert, supra,* 509 U.S. at 595. Specifically, plaintiff argues that Mr. Dunning: (1) should have used a "random sample," rather than a representative sample; (2) arrived at figures which are "grossly out of synch with" the supposed "median" income for agents; and (3) failed to deduct any overhead from the estimated gross earnings. (MIL, 4:23-5:21.)   Plaintiff's argument is misconceived.

*First*, plaintiff's attacks on Mr. Dunning are based solely on the opinions of its own *economist* expert, Mr. Fredlund. Plaintiff has asserted no basis for qualifying Mr. Fredlund as an expert in the *real estate* business. His opinions on Mr. Dunning's methodology are therefore irrelevant. *See, Jinro America* and *Ralston, supra.*

*Second,*, plaintiff attacks, without factual or legal authority, Mr. Dunning's supposed failure to follow a "scientific method" by using a representative sample, rather than a "random sample," to arrive at his estimated earnings figures. (MIL; 4:23-5:8.) The appropriateness of an expert's methods "depends upon the particular circumstances of the particular case at issue." *Kumho Tire,* supra, 526 U.S. at 150-51. In this case, the relevant question is what an agent in Oakland (where plaintiff's office is located) could have earned for the years in question, through the exercise of "reasonable diligence." *See*, 42 U.S.C. § 2000e-5(g)(1) (backpay otherwise allowable "shall" be reduced in the amount of "interim [actual] earnings or *amounts earnable with reasonable diligence*" [emphasis added]). Mr. Dunning concluded that a "random sample" would not be "appropriate" in these circumstances, since "[i]t would not reveal who the *reasonably diligent* agents are." (Dunning Report, 2 [emphasis added]; Dunning Decl., ¶ 4.). In other words, a random sample would only measure the amounts earnable through *random efforts*, including, for example, *part-time* efforts which are *per se* unreasonable (*Hansard v. Pepsi-Cola*

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

OPPOSITION TO MOTION IN LIMINE NO 2  - C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\OPPOSITIONS TO MILS\OPP-MIL-2-defense-experts-090106-FINAL.wpd

6

*Metropolitan Bottling Co., Inc.*, 865 F.2d 1461, 1468 (5th Cir. 1989); *Meyer v. United Air Lines, Inc.*, 950 F.Supp. 874, 876-77 (N.D. Ill. 1997)) and agents who use real estate as a source of secondary income, or otherwise devote insufficient efforts or methods to their business under industry norms and practices. (Dunning Decl., ¶ 4.)

Mr. Dunning therefore selected a representative sample of Oakland real estate agents, within a range of experience comparable to plaintiff's, whom he knew – based on his years of experience in the business – to be reasonably diligent in their real estate practice. (Counsel Decl., ¶ 4, Ex. C ("Dunning Depo."), 75-76; Dunning Report 3-4; Dunning Decl., ¶¶ 4-6.) He then estimated the actual earnings of those agents for the years in question, by accessing available data on such agents' closings, conservatively extrapolating their resulting earnings. (Dunning Depo., 77-78; Dunning Report, 3-4; Dunning Decl., ¶¶ 4-6.)

*Third*, plaintiff's assertion that Mr. Dunning's estimates are "grossly" disproportionate to the statistical average is likewise untrue. Plaintiff characterizes the figure of $58,720 as the Bureau of Labor Statistics' "median" income for agents, and attacks Mr. Dunning's figures, as "grossly" disproportionate. (MIL, 5:15, 18, 21.) In fact, plaintiff's figure was the *nationwide* median for the year 2004. (Cohen Report, p. 23.) This is irrelevant to what an agent *in California* could be expected to earn. (*Id.*) The median for California, according to plaintiff's own source (the Bureau of Labor Statistics), was actually **$121,830** for the same year. (*Id.*) This figure is far closer to *Mr. Dunning's* estimated range for 2004 (which started at $135,619), than to plaintiff's national average of $58,720. The Bureau of Labor Statistics therefore *supports*, rather than undermines, the reliability of Mr. Dunning's methodology.

*Finally,* plaintiff claims (at MIL, 5:8-12) that Mr. Dunning did not deduct any expenses from estimated gross earnings. To the contrary, his report expressly states that he deducted 20 % for overhead costs. (Dunning Report, 2; Dunning Decl., ¶7.)

Mr. Dunning's methodology is, therefore, the *only* methodology proffered in this case that is appropriately tailored to answer the legally relevant question – what amounts were "earnable with reasonable diligence," in Oakland, for the years in question (42 U.S.C. §

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

OPPOSITION TO MOTION IN LIMINE NO 2 - C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\OPPOSITIONS TO MILS\OPP-MIL-2-defense-experts-090106-FINAL.wpd

7

2000e-5(g)(1)), and is therefore sufficiently reliable for admission at trial. *Kumho Tire, supra*, 526 U.S. at 150-51.

### IV.  CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion *In Limine* No. 2 to Exclude Defendant's Experts should be DENIED.

DATED:  September 5, 2006                             PHILLIPS, ERLEWINE & GIVEN LLP


                                                                       By:_____
                                                                             R. SCOTT ERLEWINE
                                                                       Attorneys for Defendant NATIONAL RAILROAD
                                                                       PASSENGER CORPORATION d/b/a AMTRAK

### **DECLARATION OF COUNSEL**

R. Scott Erlewine declares:

1.      I am a member of Phillips, Erlewine & Given LLP, counsel for defendant in this case.  The facts stated in this declaration are based on my personal knowledge.

2.      Attached hereto as Exhibit A is a true and correct copy of the initial and supplemental reports of Mr. Mark Cohen in this case.

3.      Attached hereto as Exhibit B is a true and correct copy of the initial and supplemental reports of Mr. Don Dunning in this case..

4.      On June 30, 2006, plaintiff's counsel deposed Mr. Don Dunning.  Attached hereto as Exhibit C is a true and correct copy of portions of the transcript of said deposition.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED:  September 5, 2006                             _____
                                                                       R. SCOTT ERLEWINE

PHILLIPS, ERLEWINE
& GIVEN LLP
One Embarcadero Center
Suite 2350
San Francisco, CA 94111
(415) 398-0900

OPPOSITION TO MOTION IN LIMINE NO 2  - C 04-3360 SI
S:\Clients\AMTRAK\8204.8 (Hardeman)\pld\TRIAL\OPPOSITIONS TO MILS\OPP-MIL-2-defense-experts-090106-FINAL.wpd

8