IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C. FAHEEM R. HARDEMAN, | No. C 04-03360 SI |
| Plaintiff, | **ORDER GRANTING IN PART DEFENDANT'S MOTION FOR RECONSIDERATION** |
| v. | |
| AMTRAK/CALTRAIN RAILROAD, | |
| Defendant. | |

Defendant Amtrak/Caltrain Railroad filed a motion for leave to file motion for reconsideration of the Court's order granting in part defendant's motion for summary judgment. On December 18, 2006, the Court granted in part defendant's motion for leave to file, with respect to the issue of whether Joe Deely knew plaintiff's race at the time he allegedly participated in the decision to terminate plaintiff. The Court ordered plaintiff to file a response to Section III(A)(2) of defendant's [proposed] motion for reconsideration, which addresses this issue. Having considered plaintiff's response, and for good cause shown, the Court hereby GRANTS IN PART defendant's motion for reconsideration.

The Court previously found that evidence that Mr. Deely was a decision-maker, and evidence that he had made racist statements in the past, was sufficient evidence of pretext to defeat summary judgment on plaintiff's discriminatory termination claim.[1] If, as defendant argues, Mr. Deely had no knowledge of plaintiff's race at the time he allegedly made the termination decision regarding plaintiff,

---

[1] Plaintiff's case involves two instances of alleged disparate treatment: (1) disparate discipline in response to a 2002 "split switch" incident; and (2) disparate discipline – termination – in response to a 2003 derailment. Mr. Deely was only involved in the 2003 incident. This motion will therefore have no impact on the Court's prior finding that plaintiff has raised a triable issue of fact with regard to plaintiff's claim under 42 U.S.C. § 1981 for disparate discipline arising out of the 2002 incident. *See* July 31, 2006 Order at 3:6-16.

then his past statements would be irrelevant. *See DeHorney v. Bank of Amer.*, 879 F.2d 459, 468 (9th Cir. 1989). Thus in order for the Court's prior ruling to stand, as issued, plaintiff must present some evidence that Mr. Deely knew plaintiff's race.

In response to the Court's Order to Show Cause, plaintiff does not present evidence sufficient to raise a triable issue as to whether Mr. Deely knew of plaintiff's race. Plaintiff presents only three pieces of evidence related to Mr. Deely's knowledge of plaintiff's race: (1) that Mr. Deely signed plaintiff's "Return From Discipline" form following a fifteen day suspension in January 2003; (2) that Mr. Deely signed plaintiff's suspension of service form following the April 2003 derailment; and (3) that plaintiff filed an internal Amtrak EEO complaint in 1993, and that Mr. Deely is informed every time a discrimination complaint has been filed.

Plaintiff fails to explain how the first two pieces of evidence suggest that Mr. Deely knew of plaintiff's race. Neither of the forms signed by Mr. Deely indicate plaintiff's race. *See* Hardeman Decl., Exs. B & C. The Court therefore does not understand how Mr. Deely's signature on these forms implies that he knew of plaintiff's race.

The Court is similarly unpersuaded by the third piece of evidence. Even if Mr. Deely was informed of plaintiff's 1993 internal EEO complaint, nothing in the complaint indicates plaintiff's race. *See* Hardeman Decl., Ex. D. The EEO complaint form allows the complainant to mark a check-box indicating the "type of discrimination alleged." *See id.* Among the choices are a check-box for "Race," and a box for "Other (Specify)." On plaintiff's EEO complaint, the "Race" box is not checked; the "Other (Specify)" box is. *See id.* In plaintiff's narrative description of his complaint, nowhere does he suggest his race, or that race was involved in the situation giving rise to his complaint. It appears that the EEO complaint involved a dispute over seniority, and nothing more. Thus, even if Mr. Deely had read plaintiff's internal EEO complaint in 1993, doing so would not have given him knowledge of plaintiff's race.

Plaintiff has thus failed to establish a triable issue as to whether Mr. Deely knew of plaintiff's race at the time he allegedly participated in the decision to fire plaintiff. Absent such evidence, Mr. Deely's alleged racist statements are wholly irrelevant to this case. *See DeHorney v. Bank of Amer.*, 879 F.2d 459, 468 (9th Cir. 1989). The Court relied on Mr. Deely's alleged racist statements in determining

2

that plaintiff had raised an issue as to the reliability of defendant's proffered non-discriminatory reason for terminating plaintiff. The Court therefore must now determine whether, absent evidence of Mr. Deely's statements, plaintiff provided sufficient evidence to raise a triable issue of pretext.

To review, a plaintiff may make a *prima facie* case of discrimination through direct or circumstantial evidence. *See Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997). A plaintiff may also create an inference of unlawful discrimination by meeting the four requirements outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Those requirements are that: (1) he is a member of a protected class, (2) he was qualified for his position, (3) he experienced an adverse employment action and (4) similarly situated non-class members were treated more favorably. *Id.* at 802. Once a plaintiff meets this burden of production, the employer must offer a legitimate, nondiscriminatory reason for the adverse employment decision. *See Reeves v. Sanderson Plumbing Product, Inc*., 530 U.S. 133 (2000). The plaintiff may rebut the employer's legitimate, nondiscriminatory reason by showing that the proffered reason is pretextual. *See Collings v. Longview Fiber Co.*, 63 F.3d 828, 834 (9th Cir. 1995).

In this circuit, to show pretext on summary judgment, plaintiff must offer "substantial evidence that the employer's proffered reasons were not reliable, . . . or direct evidence of discrimination." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219 (9th Cir. 1998); *see also Chuang v. University of California Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000) ("[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer.") (citation omitted). The Ninth Circuit has held that "there will always be a question for the factfinder once a plaintiff establishes a prima facie case and raises a genuine issue as to whether the employer's explanation for its action is true. Such a question cannot be resolved on summary judgment." *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993). "Once a *prima facie* case is established either by the introduction of actual evidence or reliance on the *McDonnell Douglas* presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the 'elusive factual question of intentional discrimination.'" *Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1148

(9th Cir. 2006) (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985), *amended by* 784 F.2d 1407 (1986) (citation omitted)). The Ninth Circuit has also noted, however, that

> in deciding whether an issue of fact has been created about the credibility of the employer's nondiscriminatory reasons, the district court must look at the evidence supporting the *prima facie* case, as well as the other evidence offered by the plaintiff to rebut the employer's offered reasons. And, in those cases where the *prima facie* case consists of no more than the minimum necessary to create a presumption of discrimination . . . , plaintiff has failed to raise a triable issue of fact.

*Wallis v. J.R. Simplot, Co.*, 26 F.3d 885, 890 (9th Cir. 1994) (quoted with approval in *Lindsey*, 447 F.3d at 1148.

Here, as an initial matter, it is necessary to clarify precisely what treatment or actions by defendant should be analyzed for signs of disparity. Plaintiff repeatedly compares his termination with the short suspension waivers received by other employees for allegedly similar infractions. In doing so, plaintiff ignores the fact that his termination occurred only after he refused a suspension waiver, and proceeded through the full disciplinary hearing process. For purposes of establishing disparate impact, the Court must compare either the suspension waivers offered plaintiff to the suspension waivers offered similarly situated employees, or plaintiff's termination to the treatment of other employees who went through the entire disciplinary hearing process.

As compared with employees who engage in the entire disciplinary hearing process, plaintiff has presented no evidence of disparate treatment. Plaintiff presents no evidence of any employee who had a disciplinary hearing for similar conduct and was treated more favorably than plaintiff. His treatment by the disciplinary panel therefore cannot serve as the basis for his disparate treatment claim. Absent the evidence regarding Mr. Deely, plaintiff has thus failed to establish a prima facie case of discriminatory *termination*.

Nonetheless, with respect to the 2003 incident, plaintiff's disparate treatment claim may survive, based solely on the suspension waiver he was originally offered. To do so, plaintiff must establish that the suspension waiver he was offered after the 2003 derailment was more harsh than the discipline given to others for similar infractions, and that the discrepancy was motivated by race. The Court finds that plaintiff has presented sufficient evidence to establish a *prima facie* case of disparate treatment in relation to the 2003 derailment. In response to the derailment, defendant offered plaintiff a 15 day

4

suspension waiver. Plaintiff has presented evidence that a non-African-American employee responsible for a derailment, engineer Martin Jaeger, was not disciplined at all. *See* Gallo Decl. ¶ 26; Campbell Decl. ¶ 6.

The burden thus shifts to defendant to present a legitimate, non-discriminatory reason for offering plaintiff a 15 day suspension waiver, and not disciplining Martin Jaeger at all. First, defendant provides evidence that the person in charge of determining the length of plaintiff's suspension waiver, Charlie Miller, considered plaintiff's extensive disciplinary record in doing so. *See* Miller Decl. ¶ 10. Furthermore, defendants present evidence that the 15 day suspension waiver offer fell in the middle of the range of suspension waivers offered for derailments between November of 1999 and October of 2003. *See* Shim Decl., Ex. B ("Chart of Derailment Discipline"). At least one of the individuals who was offered a longer suspension waiver, Ryan Peterson, is caucasian. *See id.*, Price Decl., Ex. F, Exs. 10 & 12. With this evidence defendant sufficiently explains why plaintiff was offered a fifteen day suspension waiver.

Defendant fails, however, to present evidence explaining why Martin Jaeger was not disciplined at all for a similar incident. Though Jaeger's derailment was due to a faulty switch, *see* Gallo Decl. ¶ 26; Campbell Decl. ¶ 6, there is evidence that plaintiff's derailment was also due, at least in part, to faulty equipment. *See* Price Decl., Ex. E at 56:17-23, 57:24-25. Defendant's failure to explain the discrepancy between the punishment arising out of the two incidents casts sufficient doubt on defendant's proffered explanation for plaintiff's punishment to defeat summary judgment.

Furthermore, plaintiff presents evidence of non-derailment rules violations for which caucasian conductors and engineers were not punished. For example, Robert Castiglioni was not disciplined at all for running a train through a station without stopping. *See* Hardeman Decl. ¶ 14. Similarly, Mike Cecconi was neither investigated nor disciplined for seriously damaging an engine while executing a "drop" at an excessively high speed. *See* Gallo Decl. ¶¶ 18-23. Mike Cecconi also was not punished for splitting a switch in February 2003. *See id.* ¶¶ 7-16. Mike Shanahan was not disciplined for allowing a non-licensed individual to operate an engine. *See* Price Decl., Ex. D at 133:10-20. Though these incidents did not involve a derailment, there is some evidence that they were of comparable seriousness, and should have warranted discipline. Failure to discipline the caucasian individuals

5

**United States District Court**
For the Northern District of California

1 involved in these incidents therefore also casts doubt on the credibility of defendant's legitimate non-
2 discriminatory justifications.

3       For the foregoing reasons, the Court GRANTS IN PART defendant's motion for
4 reconsideration. Plaintiff has failed to raise a triable issue as to whether his termination was the result
5 of disparate treatment. Plaintiff's disparate treatment claim survives, however, with respect to the
6 suspension waivers he was offered in response to the 2002 "split switch" incident and to the 2003
7 derailment. (Docket No. 210)

**IT IS SO ORDERED.**

Dated: February 12 , 2007

SUSAN ILLSTON
United States District Judge